# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER COLEMAN, | : |
| Plaintiff, | : |
| v. | : NO. 3:04CV2004(MRK) |
| JAMES DZURENDA, | : |
| Defendant. | : |

## RULING AND ORDER

Petitioner Christopher Coleman, an inmate at a Connecticut correctional facility, brings this *pro se* Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [doc. # 28], seeking to overturn his state-court conviction on two counts of tampering with a witness. For the reasons stated below, the Court DISMISSES Mr. Coleman's Amended Petition [doc. # 28].

### I.

Mr. Coleman was originally charged with and tried on charges of attempted murder, kidnapping, assault, conspiracy, possession of a firearm and possession of a pistol without a permit. That trial ended in a mistrial. The State of Connecticut then re-tried Mr. Coleman on the same charges, along with two counts of witness tampering arising from the first trial. The jury acquitted Mr. Coleman of all charges, except on the two counts of witness tampering, for which the jury found Mr. Coleman guilty. He was then sentenced to five years of incarceration on each count, to run concurrent with each other and consecutive to another sentence Mr. Coleman was serving.

Mr. Coleman appealed his conviction to the Connecticut Appellate Court, which affirmed in a detailed ruling. *See State v. Coleman*, 83 Conn. App. 672 (2004). The Court assumes familiarity with the Connecticut Appellate Court's decision and the summary of facts provided in that

ruling. Thereafter, the Connecticut Supreme Court denied Mr. Coleman's petition for certification for appeal, *see State v. Coleman*, 271 Conn. 910 (2004), and the U.S. Supreme Court denied his petition for a writ of certiorari. *See Coleman v. Connecticut*, 544 U.S. 1050 (2005).

In this action, Mr. Coleman asserts four grounds for issuance of a writ of habeas corpus:

1. The trial court improperly abused its discretion when denying Mr. Coleman's request for a brief continuance while simultaneously granting an unexpected and revisited motion to allow him to represent himself *pro se*;

2. Connecticut General Statute § 53a-151, which deals with tampering with a witness, is unconstitutionally void for vagueness as applied to the facts of this case;

3. The trial court failed to instruct the jury about the *mens rea* required for witness tampering charges, and did not instruct the jury on each essential element of witness tampering; and

4. Mr. Coleman's right to a fair trial was violated by the prosecutor's egregious misconduct.

*See* Am. Pet. [doc. # 28], at 8-16, ¶ 19. The State acknowledges that Mr. Coleman properly exhausted his state remedies on each of the issues raised in his Amended Petition by virtue of his direct state court appeal, in which he was represented by counsel. *See* Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus [doc. # 35], at 7-8.

## II.

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, § 104, 110 Stat. 1214, 129, a federal court may not grant "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" unless the court is convinced that the state court's "decision . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). *See Yarborough v. Alvarado*, 541 U.S. 652 (2004); *Christie v. Hollins*, 409 F.3d 120, 124-25 (2d Cir. 2005); *Ancona v. Lantz*, No. 3:05CV363(MRK), 2005 WL 1554029, at *1 (D. Conn. July 5, 2005). Thus, when faced with a state prisoner's petition for a writ of habeas corpus, a federal court must ask itself three questions: "(1) Was the principle of the Supreme Court case law relied upon by the petitioner 'clearly established' when the state court ruled?; (2) If so, was the state court's decision 'contrary to' that established Supreme Court precedent?; (3) If not, did the state court decision constitute an 'unreasonable application' of that principle?" *Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001); *accord Kruelski v. Conn. Super. Ct.*, 316 F.3d 103, 105 (2d Cir. 2003).

Regarding the first inquiry, only holdings of the Supreme Court, not the Second Circuit, can provide a basis for habeas relief. *See DelValle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002) ("[A]fter AEDPA, [a Second Circuit decision] cannot serve as a basis for federal habeas relief under Section 2254 [unless] it has [a] counterpart in Supreme Court jurisprudence.") (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Mask v. McGinnis*, 252 F.3d 85, 90 (2d Cir. 2001)). Moreover, the Second Circuit has instructed that "the phrase 'clearly established Federal law, as determined by the Supreme Court' refers only to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Lurie v. Wittner*, 228 F.3d 113, 125 (2d Cir. 2000) (quoting *Williams*, 529 U.S. at 412) (alterations omitted). That said, "although the Supreme Court must have acknowledged the right, it need not have considered the exact incarnation of that right or approved the specific theory in order for the underlying right to be clearly established." *Ryan v. Miller*, 303 F.3d 231, 248 (2d Cir. 2002).

In considering the second inquiry, the Second Circuit has explained that

> [a] state court decision is "contrary to" existing Supreme Court precedent (i) when it applies a rule of law "that contradicts the governing law set forth in" the Supreme Court's cases, or (ii) when it "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the Supreme Court's precedent."

*Lurie*, 228 F.3d at 127 (quoting *Williams*, 529 U.S. at 406) (alterations omitted); *see also Price v. Vincent*, 538 U.S. 634, 640 (2003); *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002). "In either event, a state court ruling is '"contrary to" Supreme Court precedent only if it is "diametrically different," "opposite in character or nature," or "mutually opposed"' to the precedential holding." *Lurie*, 228 F.3d at 127 (quoting *Williams*, 529 U.S. at 405).

Finally, as this Court discussed at length in *Ancona v. Lantz*, the U.S. Supreme Court has provided substantial guidance to lower courts on how to analyze claims under the third, "unreasonable application" inquiry. *See Ancona*, 2005 WL 839655, at *3-*5. In sum, two key principles emerge from the Supreme Court's decisions.

For one, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. An unreasonable application of federal law is different from an incorrect or erroneous application of federal law. A federal court may not grant a habeas petition unless it is convinced that the state court's ruling was not only erroneous but also objectively unreasonable. *See Brown v. Payton*, 544 U.S. 133, 141-42 (2005). As the Second Circuit put it recently, "the AEDPA standard requires 'some increment of incorrectness beyond error.'" *Christie*, 409 F.3d at 125 (internal citations and alterations omitted).

For another, in assessing the reasonableness of a state-court adjudication, the range of reasonable judgment can depend upon the nature of the rule at issue. For a specific legal rule, "the

4

range may be narrow" – either "plainly correct or incorrect." *Yarborough*, 541 U.S. at 664 (2004). Other rules are more general, however, affording state courts "more leeway" in reaching determinations on a case-by-case basis. *See id.*

With these principles in mind, the Court turns to consider each of Mr. Coleman's claims.

**A.**

On the day before jury selection was to begin in his second trial, Mr. Coleman told the trial judge that he wanted to represent himself. The following day, the trial court held a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975) on Mr. Coleman's request for self-representation. During the *Faretta* hearing, Mr. Coleman asked for a brief continuance, saying that he needed time to go over his paperwork. After conducting a thorough *Faretta* inquiry, the trial court granted Mr. Coleman's request to represent himself but denied his request for a continuance. Jury selection began the next day. Mr. Coleman participated in the voir dire and at trial cross-examined several witnesses before accepting the trial court's previous advice and allowing his court-appointed counsel – who had remained at his side as standby counsel throughout trial – to resume his representation of Mr. Coleman.

In the Connecticut Appellate Court, Mr. Coleman argued that the trial court's granting of his motion to proceed *pro se* while simultaneously denying his motion for a brief continuance violated his constitutional rights to self-representation and to provide a defense. The Appellate Court considered this claim, even though it had not been preserved below, and concluded that the trial court had not abused its discretion in denying Mr. Coleman's request for a continuance:

> During the *Faretta* hearing, the defendant asked the court for a continuance, stating that he needed time to "go over [his] paperwork." The court denied that request and proceeded with voir dire, with the defendant acting as his own attorney. The

5

> defendant now argues that the court's denial of his motion for a continuance prevented him from being able to interview and to prepare witnesses, and therefore violated his rights to self-representation and to present a defense.
>
> The trial transcript reveals that the defendant indicated that he needed time to "go over [his] paperwork," not that he needed time to interview or to prepare witnesses. We are confined in our review of a court's denial of a motion for a continuance to those grounds raised in and considered by the trial court, and are precluded from considering the defendant's claim on the basis of a ground that was not articulated before the trial court. Confining our review of the denial of the motion to the ground raised in the trial court, we conclude that the court did not abuse its discretion. Faced with the imprecise explanation that the defendant merely sought time to go over paperwork, we cannot say that the court's denial was arbitrary or unreasonable.
>
> We also note that the trial court has a responsibility to avoid unnecessary interruptions, to maintain the orderly procedure of the court docket, and to prevent any interference with the fair administration of justice. Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system. . . . Judges must be firm and create the expectation that a case will go forward on the specific day that it is assigned. For those reasons, we often have expressed our disfavor with motions for continuances that are filed on the eve of trial.

*Coleman*, 83 Conn. App. at 687-89 (internal quotation marks and citations and footnote omitted) (alterations in original).

In order to obtain habeas relief for a denial of a continuance, a petitioner must show not only that the denial of the continuance was an abuse of discretion, but also that it was so arbitrary and so fundamentally unfair that it violated the petitioner's right to due process. *See Drake v. Portuondo*, 321 F.3d 338, 344 (2d Cir. 2003). Scheduling is traditionally a matter left to the discretion of the trial court. *See id.* As a consequence, "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the Constitution." *Drake*, 321 F.3d at 344 (quoting *Morris v. Slappy*, 461 U.S. 1, 12 (1983)) (alterations omitted); *accord United States v. Cicale*, 691 F.2d 95, 106-07 (2d Cir. 1982) (listing factors to consider in deciding

if denial of a continuance violated due process rights); *see also United States v. Scopo*, 861 F.2d 339, 344 (2d Cir. 1988). To establish a constitutional violation, a petitioner must establish both arbitrariness and prejudice. *See United States v. Arena*, 180 F.3d 380, 397 (2d Cir. 1999).

Mr. Coleman has not established either. Jury voir dire began on April 30 and continued until May 13; trial began the next day, May 14. Thus, Mr. Coleman had nearly two weeks while voir dire was proceeding to review his paperwork and prepare his case. In that regard, it is important to recall that Mr. Coleman had already sat through his first trial and thus was intimately familiar with the case and the State's witnesses and that his case had been pending for retrial for nearly eleven months. Also, the trial court had previously granted Mr. Coleman a continuance at his instance. Therefore, the trial court's denial of a continuance was not "unreasoning or arbitrary." *See Drake*, 321 F.3d at 344. Furthermore, it was not prejudicial because Mr. Coleman examined only the first four witnesses before turning his defense back to his court-appointed counsel, who had remained at his side as standby counsel. *See Hill v. Ozmint*, 339 F.3d 187, 197 (4th Cir. 2003) (finding no prejudice where defendant's request for a continuance to allow for witness testimony and introduction of tape was denied). Those four witnesses testified only regarding the robbery and assault charges, on which Mr. Coleman was acquitted. By the beginning of the second day of trial, when evidence regarding witness tampering was introduced – the only charges on which Mr. Coleman was convicted – his court-appointed counsel had resumed representation of Mr. Coleman and conducted the examination of those witnesses. Accordingly, Mr. Coleman's first argument does not provide a basis for granting his Petition.

**B.**

Mr. Coleman next asserts that the Connecticut witness tampering statute, Connecticut General Statute § 53a-151, is unconstitutionally vague, and thus void, as applied to his case. Section 53a-151 states as follows:

> A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding.

Conn. Gen. Stat. 53a-151(a). Mr. Coleman argues, as he did before the Connecticut Appellate Court, that § 53a-151 is ambiguous as applied to him because it fails to provide adequate notice that his conduct was prohibited. In particular, Mr. Coleman takes issue with the statutory phrase "induces or attempts to induce a witness to testify falsely," which he contends implies that to violate the Statute, one must bribe, threaten or coerce a witness into providing false testimony when that witness is reluctant to do so. In that respect, Mr. Coleman argues that the Statute does not fairly warn that its terms can be violated when a witness is willing to testify falsely at the outset, independent of any coercive influence by a defendant.

Again, even though Mr. Coleman had not raised this claim below, the Connecticut Appellate Court considered it. The court rejected it as follows:

> A statute need not exhaustively list the exact conduct prohibited. A vagueness challenge can be surmounted if interpretations of the statute by our appellate courts elucidate the reach of the statute's prohibitions. *See Packer v. Board of Education*, 246 Conn. 89, 107, 717 A.2d 117 (1998). Any ambiguity claimed by the defendant in the phrase, "induces or attempts to induce," however, was resolved in *State v. Cavallo*, 200 Conn. 664, 513 A.2d 646 (1986), in which our Supreme Court expressly considered and rejected the notion that this phrase renders § 53a-151 void for vagueness. The court explained that "[t]he language of § 53a-151 plainly warns potential perpetrators that the statute applies to any conduct that is intended to prompt a witness to testify falsely. . . . The legislature's unqualified use of the word

8

> 'induce' clearly informs persons of ordinary intelligence that any conduct, whether it be physical or verbal, can potentially give rise to criminal liability. Although the statute does not expressly mandate that the perpetrator intend to cause the witness to alter or withhold his testimony, this implicit requirement is apparent when the statute is read as a whole. . . . The legislature's choice of the verb 'induce' connotes a volitional component of the crime of tampering that would have been absent had it employed a more neutral verb such as 'cause.' Furthermore, the statute's application to unsuccessful, as well as successful, attempts to induce a witness to render false testimony supports our conclusion that *the statute focuses on the mental state of the perpetrator* to distinguish culpable conduct from innocent conduct." (Citations omitted; emphasis added.) *Id*., at 668-69, 513 A.2d 646.
>
> The clear import of that language is that the respective mental states of the McMichaels, i.e., their purported willingness to testify falsely, is irrelevant to whether the defendant's conduct falls within the statutory bounds of proscribed conduct. The Supreme Court made clear that liability under § 53a-151 hinges on the mental state of the perpetrator in engaging in the conduct at issue-his intent to induce a witness to testify falsely-not on whether he must overcome by coercive means the will of a witness reluctant to do so.

*Coleman*, 83 Conn. App. at 677-78. Accordingly, the Appellate Court held that § 53a-151, as interpreted by case law, provided fair warning of the conduct that it prohibits and was not void for vagueness as applied to the facts of Mr. Coleman's case. *See id*. at 679.

The Connecticut Appellate Court's decision is consistent, not contrary, to established Supreme Court precedent in assessing void-for-vagueness challenges to penal statutes. As the Second Circuit explained recently, "A penal statute is not void for vagueness if it defines the offense (1) 'with sufficient definiteness that ordinary people can understand what conduct is prohibited' and (2) 'in a manner that does not encourage arbitrary and discriminatory enforcement.'" *United States v. Gagliardi*, – F.3d –, –, 2007 WL 3051906, at *5 (2d Cir. 2007) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)); *see Gonzales v. Carhart*, 127 S.Ct. 1610, 1628 (2007) ("[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that

9

does not encourage arbitrary and discriminatory enforcement.")(internal quotation marks omitted).

Nor does the Appellate Court's decision represent an unreasonable application of that precedent. The facts at trial established the following: Mr. Coleman asked his girlfriend to provide him with a false alibi; he then wrote her four letters from prison detailing the facts of the false alibi he wished her to provide and instructed her to give the letters to her mother, so that she too could support the false alibi; he thereafter rehearsed the false alibi with both his girlfriend and her mother, testing their memories of the false details he had provided them in his letters. Furthermore, Mr. Coleman's cellmate from prison testified that Mr. Coleman told him that he had told his girlfriend and her mother to provide him with a false alibi and that he had told them exactly what to say to investigators and in their testimony. *See Coleman*, 83 Conn. App. at 674-76. In those circumstances, the Appellate Court was more than justified in concluding that the language of § 53a-151, particularly when read in light of existing Connecticut Supreme Court precedent, was not unconstitutionally vague and provided Mr. Coleman with sufficient notice to satisfy constitutional requirements. *See Gagliardi*, 2007 WL 3051906, at *5-*6.

## C.

Mr. Coleman also argues that the trial judge failed to instruct the jury on the *mens rea* required for witness tampering and did not instruct the jury on each of the essential elements of the crime. In pertinent part, the trial court instructed the jury as follows:

> For you to find the defendant guilty of this charge, the state must prove . . . that the defendant induced or attempted to induce a witness to testify falsely. It should be noted that it is immaterial whether the defendant was successful in producing the result he intended. It is, however, sufficient if the defendant *knowingly* makes any false statements or practices any fraud or deceit *with the intent to affect the testimony* or conduct of a person who is a witness or who may be a witness at any official proceeding. If you find that the state has proven beyond a reasonable doubt each of

the elements of the crime as to each count of tampering with a witness, then you shall find the defendant guilty as to each count.

*Id.* at 690. Once again, though not raised below, the Appellate Court considered Mr. Coleman's claim. The court rejected the claim because considering the charge as a whole, the jury charge was complete and accurate:

> Our review of a jury instruction . . . is not undertaken with a myopic insistence on precise explanations of legal principles, but rather with a broad expectation that the instruction fairly apprises the jury of the issues requiring resolution and guidance in that task. The jury instruction given by the court was accurate in both its explanation of the legal issues and its provision of guidance as to how the jury should resolve those issues. The court specifically referenced the element of intent and accurately explained that intent to effect the testimony of a witness is the gravamen of the crime of witness tampering. We therefore conclude that the court properly charged the jury on the elements of § 53a-151.

*Id*. at 691. The court also noted in passing that the trial court's charge comported, "virtually to the letter, with the model instruction found in the leading treatise on Connecticut jury instructions. *See id.* n.12 (citing R. Leuba & R. Fracasse, *Connecticut Selected Jury Instructions Manual* (1998) § 4.5).

To obtain a writ of habeas corpus on the basis of an error in a state court's instructions to the jury on matters of state law, a petitioner must show not only that the instruction misstated state law, but also that the error violated a right guaranteed him by federal law. *See DelValle*, 306 F.3d at 1201; *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001); *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985). Thus, a state prisoner making a claim of improper jury instructions faces a substantial burden:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is whether

11

> the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned.

*DelValle*, 306 F.3d at 1201 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (internal quotation marks omitted); *accord Davis*, 270 F.3d at 123 ("Where an error in a jury instruction is alleged, it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.") (internal quotation marks omitted). The "Supreme Court has also held that it is a 'well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *DelValle*, 306 F.3d at 1201 (quoting *Cupp v. Naughton*, 414 U.S. 141, 146-47 (1973)).

Here, the Connecticut Appellate Court examined the disputed charge in the context of the entire charge. That charge expressly referenced the issue of intent and the elements of the offense. In the circumstances, therefore, the Connecticut Appellate Court's decision was not contrary to established precedent and does not represent an unreasonable application of that precedent.

**D.**

Mr. Coleman's final challenge to his state court conviction focuses on the conduct of the prosecutor during his cross-examination of Mr. Coleman as well as the prosecutor's comments in his closing argument. Specifically, Mr. Coleman argues that the state prosecutor engaged in the following misconduct: (1) he improperly expressed his personal opinion that Mr. Coleman was lying; and (2) he also improperly asked Mr. Coleman to comment on the veracity of other witnesses' testimony and then highlighted Mr. Coleman's responses during his closing argument. *See* Am. Pet. [doc. # 28], ¶ 19. In the Connecticut Appellate Court, Mr. Coleman argued that the prosecutor's

12

conduct was egregious and warranted a new trial. Once again, even though Mr. Coleman's claims were not preserved at trial, the Appellate Court considered and rejected them.

The facts underlying Mr. Coleman's first claim that the prosecutor expressed his personal opinion are as follows. Mr. Coleman testified at his second trial and offered testimony to refute the State's assertion that he intended to cause his girlfriend to testify falsely. During the State's cross-examination of Mr. Coleman, he testified that he told his then attorney, Frank Riccio, Sr., not to call Mr. Coleman's girlfriend as a witness, and even argued with Mr. Riccio, who allegedly wanted to call her as a witness. At that point, the prosecutor said, "Get me Riccio right away." The trial court immediately chastised the prosecutor in front of the jury. *See Coleman*, 83 Conn. App. at 694. While Mr. Riccio testified at trial, the State was not allowed to question him about any conversations he had with Mr. Coleman; nor was the State allowed to expand upon Mr. Coleman's testimony concerning conflicts with his counsel over who should testify at trial.

The Appellate Court's decision is not contrary to Supreme Court precedent. In fact, the Appellate Court recognized that "a prosecutor may not express her own opinion, either directly or indirectly, as to the credibility of a witness or the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony and are particularly difficult for the jury to ignore because of the special position held by the prosecutor." *See id.* at 693-94 (internal quotation marks omitted). However, although expressly "disapprov[ing] of the prosecutor's sarcastic and gratuitous commentary," the Appellate Court nonetheless concluded that it did not amount to an expression of the prosecutor's personal opinion and that it was unlikely that the jury interpreted it as such. *See id.* at 694. That conclusion was not objectively unreasonable in the circumstances

13

of this case. *See Brown*, 544 U.S. at 141; *Williams*, 529 U.S. at 409-13. Therefore, the prosecutor's comment regarding Mr. Riccio does not provide a basis for disturbing Mr. Coleman's conviction.

The facts underlying Mr. Coleman's second claim of prosecutorial misconduct are as follows. In cross examining Mr. Coleman, the prosecutor asked him whether his girlfriend's testimony at the first trial was true and Mr. Coleman said that she had lied. Later, the prosecutor asked Mr. Coleman about another witness's testimony, and Mr. Coleman said that the witness was also lying. The prosecutor then asked: "So, let me get this right . . . Every one is lying against you?" Mr. Coleman responded, "Yeah." "Everybody?" the prosecutor asked, to which Mr. Coleman responded, "Yes." The prosecutor then proceeded to name several witnesses, including his alibi witnesses at the first trial and Mr. Coleman testified that each was lying. *See Coleman*, 83 Conn. App. at 696-97. In his closing argument, the prosecutor argued, in relevant part, that Mr. Coleman,

> basically has told you from the witness stand that [each of these witnesses] is a liar. . . . That all of these people have basically come in and that they've lied on him. What I would say to you at this point, ladies and gentlemen, is, isn't it funny, isn't it funny, that the only person who has got a vested interest in this case, and that is [the defendant], that the only person with a vested interest in this case and therefore a motive not to tell the truth, that he's the person who is now standing here and saying that everyone else is lying against him? Isn't that an interesting fact, the defendant calling everyone else a liar?

*Id*. at 697 (alterations omitted).

The Appellate Court recognized that the Connecticut Supreme Court had previously adopted an evidentiary rule that prohibited a prosecutor from posing questions that compel a defendant to make credibility determinations of the witnesses or to assess the veracity of their testimony. *See id.* at 695 (citing *State v. Singh*, 259 Conn. 693, 706 (2002)). Furthermore, the Appellate Court also acknowledged that the prosecutor's comments in this case are

14

> precisely the type of conduct admonished in *Singh*. . . . The line of questioning at issue in the present case clearly was improper under the rule articulated in *Singh* because it impermissibly invaded the province of the jury to determine issues of witness credibility and because such questioning suggested to the jury that inconsistencies between the testimony of witnesses can be explained only by deliberate misrepresentation when, in fact, testimony may be in conflict for other reasons.

*Id*. at 697-98.

Those conclusions did not end the inquiry, however, for the Appellate Court also needed to determine whether "the trial as a whole was fundamentally unfair and [whether] the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." *Id.* at 698. In the context of the entire trial, the court concluded that the instances of improper questioning did not cause "substantial prejudice or undermine the fairness of the trial. As the quoted excerpts demonstrate, the instances of misconduct were not sufficiently severe or numerous to form a pattern of egregious misconduct throughout the trial that would deprive the defendant of his fundamental right." *Id.* This was particularly true, observed the Appellate Court, since the trial court had expressly instructed the jurors that witness credibility was solely within their province. *See id*. at 699.[1]

Here, too, the Appellate Court's decision is not contrary to Supreme Court precedent. Thus, in *Darden v. Wainright*, 477 U.S. 168 (1986), the Supreme Court held that in order to render a trial unfair, "[it] is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with

---

[1] The Appellate Court also noted that the failure of Mr. Coleman's counsel to object to the remarks suggests that he, too, did not "perceive the remarks in the prejudicial light claimed on appeal." *Coleman*, 83 Conn. App. at 699.

15

unfairness as to make the resulting conviction a denial of due process." *Id*. at 181 (quotation marks and citations omitted); *see Ancona*, 2005 WL 839655, at *5 (citing *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002); *United States v. Coriaty*, 300 F.3d 244, 255 (2d Cir. 2002); *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998)). That is precisely the question that the Appellate Court posed for itself.

Nor is the Appellate Court's ultimate conclusion regarding the effect of the prosecutor's misconduct objectively unreasonable. As this Court noted in its decision in *Ancona*, the standard enunciated in *Darden* constitutes a general rule, which under *Yarborough*, entitled the Connecticut Appellate Court to "more leeway" in reaching its determination that the prosecutor's remarks were not so severe that they deprived Mr. Coleman of a fundamentally fair trial. *See Ancona*, 2005 WL 839655, at *4 (citing *Yarborough*, 541 U.S. at 664). As *Yarborough* noted, "[a]pplying a general standard to a specific case can demand a substantial element of judgment." *Yarborough*, 541 U.S. at 664; *see Ewing v. California*, 538 U.S. 11, 34 n.2 (2003) (noting that courts are "faced with imprecise commands [and] must make difficult decisions" when asked to assess whether prosecutorial misconduct deprived a defendant of a fair trial). The Appellate Court's exercise of that judgment was not objectively unreasonable in the circumstances of this case. *See Darden*, 477 U.S. at 179, 180 nn.11-12 (refusing to set aside petitioner's capital conviction even though prosecutor referred to him in closing argument as an "animal" and stated "I wish [the victim] had had a shotgun in his hand when he walked to the back door and had blown [Darden's] face off. I wish that I could see him sitting here with no face, blown away by a shotgun."); *United States v. Thomas*, 377 F.3d 232, 246 (2d Cir. 2004) (declining to reverse conviction where prosecutor twice accused defendant of having "lied"); *Coriaty*, 300 F.3d at 256 (noting "[w]e have upheld convictions after summations

16

in which a witness was "[s]everal times . . . called . . . a liar"); *cf. Floyd v. Meachum*, 907 F.2d 347, 349-53 (2d Cir. 1990) (reversing for prosecutorial misconduct where prosecutor "characterized [defendant] as a liar" a total of forty times in her closing summation and rebuttal).

### III.

Having rejected each of the grounds asserted in support of Mr. Coleman's Petition, the Court DISMISSES his Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [doc. # 28]. Furthermore, because Mr. Coleman has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. **The Clerk is directed to enter judgment and close this file.**

IT IS SO ORDERED.

/s/     Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: October 25, 2007.**